# EXHIBIT E

# AFC
## ADVANCED FLOWER CAPITAL

477 South Rosemary Avenue, Suite 301, West Palm Beach, Florida 33401

**PRIVILEGED & CONFIDENTIAL**

Jon Loevy
Michael Kanovitz
c/o Jon Loevy as Borrower Representative
311 N. Aberdeen Street, Suite 420
Chicago, IL 60607

Dear Mr. Loevy and Mr. Kanovitz:

We write concerning the September 30, 2021 Second Amended and Restated Credit Agreement among the Lenders, the Borrowers and their parent, JG Holdco LLC (the "Credit Agreement," cited as "CA").[1] For simplicity, in this letter we refer to the Lenders as "AFC" and the Borrowers as "Justice Grown." AFC demands payment under the Shareholder Guaranty you signed on or about April 5, 2021 (the "Shareholder Guaranty," cited as "SG").[2]

As you know, AFC has been unhappy with Justice Grown for some time. In our view, Justice Grown—under your leadership—has engaged in a pattern of deceit and willful violations of its most basic obligations as a borrower. As just one example, Justice Grown submitted a disbursement request to AFC for, among other things, $408,814.00 for extraction equipment from Precision (Invoice S26402), but then spent the disbursed funds elsewhere. In another, Justice Grown omitted TC Applico, LLC from Justice Grown's May 2024 Perfection Certificate—which you signed—precluding AFC from requesting that the property be included as part of the collateral package in connection with the 2024 Forbearance Agreement. AFC considers itself to have been fraudulently induced into that 2024 Forbearance Agreement.

Under your leadership, Justice Grown has also failed to be truthful in its compliance certificates and other financial deliverables, failed to be truthful in its perfection certificate, failed to make timely interest payments, failed to make timely payments of principal, failed to timely provide its financial statements, and failed to abide by many of the other covenants in the Credit Agreement. In fact, the only manner in which Justice Grown has been consistent is in its regular defaults under the Credit Agreement.

Justice Grown has not only disregarded its obligations under the Credit Agreement, but in running its business. Justice Grown has failed to timely pay its vendors, contractors, or taxes, failed to keep accurate and complete inventory records, failed to protect its property from unlawful

---

[1] All capitalized terms have the meanings ascribed to them in Section 1.1 of the Credit Agreement.

[2] Any capitalized term not defined in the Credit Agreement has the meaning ascribed to such term in Section 1(a) of the Shareholder Guaranty.

break-ins and destruction, and failed to comply with essential cannabis regulations. This latter failure has resulted in a lawsuit by the Pennsylvania Department of Health, Bureau of Medical Marijuana, and caused Justice Grown to lose one of its cannabis licenses. Again, this all happened with you at the helm.

AFC hereby demands $29,756,001.30 in losses and liability that you are obligated to cover. These losses and liabilities, and your concomitant guaranty obligations, relate to the following misconduct and breach of obligations by Justice Grown: (i) Restricted Payments that Justice Grown has made to various Justice Grown affiliated entities in violation of the Credit Agreement and (ii) unpaid taxes and other charges for the Pennsylvania operations.

As you know, you irrevocably and unconditionally agreed in the Shareholder Guaranty to guaranty payment of the Guaranteed Obligations, which include all "losses, expenses, charges, costs or liability to any member of the Lender Group" arising from, among other things: (1) "any material breach of any representation and warranty in the Credit Agreement or any other Loan Document"; or (2) a Loan Party's failure to pay "any Taxes or other governmental charges or charges for labor and materials."

Your actions, and those of Justice Grown and its affiliates, fit squarely within the definition of Guaranteed Obligations outlined above, and it is time for you to make good on your agreement to the Shareholder Guaranty.

### A. Payments from Justice Grown to Justice Grown Affiliates

AFC has evidence that Justice Grown made up to $19,247,622.42 in Restricted Payments between September 2021 and August 2023 to various Justice Grown affiliated entities in violation of the Credit Agreement, including: $15,886,015.94 in Restricted Payments to Oakland Manager; $2,394,844.44 in Restricted Payments to or for the benefit of JG Holdco's subsidiaries located in Illinois, Massachusetts, Michigan and California; and $966,762.00 in Restricted Payments to Law Finance Group for the benefit of Oakland Manager.

Payments to or for the benefit of Oakland Manager and JG Holdco's subsidiaries located in Illinois, Massachusetts, Michigan, and California are undoubtedly Restricted Payments: Restricted Payments are defined in Section 1.1 of the Credit Agreement to include any direct or indirect payments of "management fees or advisory fees to any Affiliate of a Loan Party," including administrative and other business expenses. All of the Justice Grown entities qualify as Affiliates of Justice Grown because they are under common control with Justice Grown—all are directly or indirectly majority owned by JG Holdco. (*See* CA § 1.1.) Moreover, on June 30, 2022, the parties executed Amendment No. 1 to Second Amended and Restated Credit Agreement ("Amendment No. 1") that expanded the definition of Restricted Payments to include any direct or indirect "payment of any kind to Jon Loevy, Michael Kanovitz, [or] their Affiliate." (Amendment No. 1, Exhibit A, § 6.8.) Your significant ownership interest in each of these entities, indirectly through your ownership interest in JG Holdco, means that these payments made after June 2022 were Restricted Payments under this clause of the definition as well. And payment of debts (e.g., to Law Finance Group) for the benefit of these Justice Grown Affiliates are still indirect payments to an Affiliate of Justice Grown.

Until Amendment No. 1, Section 6.8 of the Credit Agreement prohibited Justice Grown from making, or causing a subsidiary to make, Restricted Payments unless at the time of the payment (i) there was not an ongoing Event of Default and the payment would not cause an Event of Default; and (ii) the Borrowers were in "pro forma compliance with" enumerated financial covenants, both before and after the payment. Amendment No. 1 prohibited Justice Grown from making *any* Restricted Payments other than approved tax payments. On August 26, 2022, the parties executed Amendment No. 2 to the Second Amended and Restated Credit Agreement ("Amendment No. 2"), which allowed Justice Grown to make a broader scope of Restricted Payments, but only if they were (a) "review[ed] and verifi[ed]" by AFC and (b) Justice Grown was in compliance with an expanded list of financial covenants. (*See* Amendment No. 2, Exhibit A, § 6.8.) Nearly half of the $18.9 million in Restricted Payments for which AFC seeks recovery were made after Amendment No. 1 was executed.

Based on AFC's assessment, Justice Grown made all of these Restricted Payments without satisfying the conditions in the Credit Agreement, even before Amendment No. 1. There were, for example, existing Defaults and Events of Defaults—many of which are listed in the parties' 2023 Forbearance Agreement and in the 2024 Forbearance Agreement (collectively, the Forbearance Agreements")—at the time of the payments. In addition, compliance certificates delivered to AFC Agent during the time such payments were made show that the Borrowers failed to comply with one or more of the necessary financial covenants. Obviously, none of these Restricted Payments were a tax payment, and none of these Restricted Payments made after the parties executed Amendment No. 2 were approved by AFC. They were therefore prohibited. While the Forbearance Agreements permitted future management fee payments to Oakland Manager, they were capped at $80,000 per month in the 2023 Forbearance Agreement, and the cap was reduced to $40,000 in the 2024 Forbearance Agreement. Justice Grown's payments to Oakland Manager far exceed these amounts.

The Shareholder Guaranty requires you to pay these diverted monies to AFC because the Shareholder Guaranty defines Guaranteed Obligations to include losses and liabilities to the Lender Group arising from "any material breach of any representation and warranty in the Credit Agreement or any other Loan Documents." (SG § 1(a)(v).) The Credit Agreement, amendments to it, and the Forbearance Agreements, are all Loan Documents. (*See* CA § 1.1 (defining "Loan Document" to include "this Agreement . . . and any other instrument or agreement entered into, now or in the future, by Parent or any Loan Party or any shareholder of Parent or any Loan Party, and any member of the Lender Group in connection with this Agreement".) Justice Grown represented in each of the Forbearance Agreements and in each amendment to the Credit Agreement that there had been no "Event of Default.". Prohibited Restricted Payments constitute an Event of Default under Section 8.1(b)(i) of the Credit Agreement, so Justice Grown repeatedly breached representations and warranties in the Loan Documents and is liable to AFC for doing so. The money unlawfully diverted to these entities could have been used to fulfill Justice Grown's obligations to AFC under the Credit Agreement.

### B.  Unpaid Taxes and Charges for the Pennsylvania Operations

The Shareholder Guaranty also defines Guaranteed Obligations to include losses arising from "the failure by a Loan Party to pay any Taxes or other governmental charges or charges for

3

labor and materials." (SG § 1(a)(vi).) It is our understanding that Justice Grown presently has an accounts payable balance in an amount of $7,013,127.88 as of February 10, 2025, and unpaid taxes in an amount of $3,495,250 through June 30, 2023, associated with its Pennsylvania operations. You are required to pay these amounts. It is no answer to say that these liabilities are not yet "losses" to AFC. Under Pennsylvania law, these liabilities would attach to any equity sale of the Pennsylvania assets and therefore reduce the value of the potential sale proceeds. Because AFC is entitled to any proceeds derived from the Pennsylvania assets in the upcoming foreclosure, Justice Grown's failure to pay these taxes and charges will result in less value being received by AFC in the foreclosure. You are therefore obligated to provide the $10,508,377.88 balance to AFC now.

\*     \*     \*

This letter does not purport to contain a complete list of all Guaranteed Obligations for which you are liable, or potentially liable, under the Shareholder Guaranty. If AFC must resort to litigation to enforce the Shareholder Guaranty, it will assert all causes of action against Justice Grown and you personally, including seeking recovery for Justice Grown's pattern of misrepresentations, fraud, and unlawful money diversions. While we are prepared to resolve this dispute through the immediate payment of the $29,756,001.30 owed under the Shareholder Guaranty, we are also prepared to litigate. Indeed, we have instructed O'Melveny to begin drafting a complaint and believe that proceeding with discovery will lead us to have additional claims. We therefore request a response by Wednesday, February 26. Otherwise, we will assume that you are not interested in resolving this matter without court intervention.

Among other things, you also must pay our attorneys' fees and expenses under Section 16(a) of the Shareholder Guaranty. And of course AFC might discovery additional obligations you must satisfy. AFC looks forward to discussing with you.

In the meantime, please ensure you satisfy your obligation to hold and preserve all documents in connection with these matters. Also, please let us know if you have retained counsel to represent you so that we can communicate with him or her going forward. We understand that Gail Brashers-Krug has represented Justice Grown and previously responded to a letter including discussion of the Shareholder Guaranty. But we do not know whether you ever engaged her to represent you personally. And even if you did in the past, she is not permitted to practice law at this time.

Very truly yours,

*Daniel Neville*
Daniel Neville
Chief Executive Officer
Advanced Flower Capital Inc.

4