

May 5, 2025

**VIA ECF**

The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

>     Re:   Hayden Gateway LLC, et al. v. Advanced Flower Capital Inc., et al., Case No. 3:25-cv-2789, Plaintiffs' Response to Defendants' Supplemental Submission Regarding Preliminary Injunction Hearing

Dear Judge Quraishi:

Plaintiffs Hayden Gateway LLC ("Hayden") and Bloc Dispensary LLC ("Bloc") (jointly, "Plaintiffs"), respectfully submit the following response to Defendants' Supplemental Submission regarding the evidentiary objections that were raised by Defendants Advanced Flower Capital Inc. and AFC Agent LLC (jointly, "Defendants" or "AFC") ahead of the May 2, 2025 Preliminary Injunction Hearing.[1] For the reasons outlined below, Plaintiffs respectfully request that the disputed evidence be admitted in full.

*AFC's Motive.* As a threshold matter, AFC contends that Mr. Kanovitz cannot testify about AFC's financial motive to falsely accuse Plaintiffs of default. AFC argues that Mr. Kanovitz lacks personal knowledge on that topic and that any testimony would be based on hearsay and/or speculation. This argument fails under the applicable law.

"It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits,'" such that the Federal Rules of Evidence are relaxed and hearsay may be admissible. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). This relaxed evidentiary standard, combined with the expedited schedule typically required by the emergent nature of such proceedings, supports the admissibility of Mr. Kanovitz's testimony at this stage. *See, e.g., Kos Pharms., Inc.*, 369 F.3d at 718-19 (collecting relevant cases and affirming admission of certificate containing multiple levels of hearsay); *Kim v. Hanlon*, No. 24-CV-1098 (ZNQ) (TJB), 2024 WL 1342568, at *10 (D.N.J. Mar. 29, 2024) (permitting expert testimony in PI hearing, prior to any *Daubert* or Rule 702 analysis or

---

[1] This Letter addresses the objections relevant to the evidence offered at the hearing. This Letter does not address Defendants' objections to evidence that was never offered, such as the testimony of Mr. Warraich, nor does it address Defendants' request that Plaintiffs produce a different version of Exhibit 19 that was not introduced at the hearing, as that issue is before Judge Day.

**Boston**                    **Miami**                    **New York**

adjudication); *Startrak Sys., LLC v. Hester*, No. 07-CV-3202 (DRD), 2007 WL 2705159, at *8–9 (D.N.J. Sept. 14, 2007) (declining to strike an affidavit despite lack of personal knowledge by declarant). Accordingly, the testimony offered by Mr. Kanovitz is admissible at the preliminary injunction stage, and any objections should go to weight, not admissibility. *See Kos*, 369 F3d at 718-19; *Delco LLC v. Giant of Maryland, LLC*, No. 07-CV-3522 (JBS), 2007 WL 3307018, at *14 (D.N.J. Nov. 8, 2007) (weighing hearsay evidence against competing affidavits in preliminary injunction).

AFC next contends that, under New York law, a party's motive for exercising its contractual right is not relevant, and thus, any evidence regarding AFC's motives is both irrelevant and inadmissible. This contention, however, controverts the low standard for "relevance" and ignores the claims at issue during the preliminary injunction hearing.

"Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401's definition of relevance is very broad and does not raise a high standard." *United States v. Leake*, 396 Fed. Appx. 898, 903 (3d Cir. 2010) (cleaned up).

Under New York law, moreover, bad faith is relevant in contractual disputes when there is an allegation of "malevolent" action or self-dealing by the party exercising the contractual right. *See, e.g.*, *Barnett v. Berkowitz*, 217 A.D.3d 523, 524, 192 N.Y.S.3d 11 (1st Dept. 2023) ("Even if a party has not expressly breached a contract, it may breach the implied duty of good faith where it exercises a contractual right as part of a scheme to deprive the other party of the benefit of its bargain."); *Schertz v. Chertok*, 180 A.D.3d 609, 610, 117 N.Y.S.3d 239 (1st Dept. 2020) ("[A]n explicitly discretionary contract right cannot be exercised in bad faith so as to deprive the other party of the benefit of the bargain."); *Richbell Info Servs. v. Jupiter Partners*, 309 A.D. 2d 288, 301-03, 765 N.Y.S.2d 575 (1st Dept. 2003) ("[T]he allegations here clearly go beyond claiming only that Jupiter should be precluded from exercising a contractual right; they support a claim that Jupiter exercised a right malevolently, for its own gain as part of a purposeful scheme designed to deprive plaintiffs of the benefits of the joint venture and of the valye of their pre-existing holdings[.]"). Indeed, "bad faith" is an express element of a claim for breach of the implied covenant of good faith and fair dealing. *Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 1:21-CV-1337-GHW, 2022 WL 603999, at *7 (S.D.N.Y. Feb. 28, 2022) ("[T]o state a claim for breach of the implied covenant of good faith and fair dealing, plaintiffs must satisfactorily allege specific elements that are not required to state a claim for breach of contract, including by supplying specific factual allegations of bad faith." (cleaned up)).

AFC's entire course of conduct throughout this matter—from its collusion with Bossidy, bad-faith demands, and apparent defiance of the Temporary Restraining Order—indicates that AFC was not merely exercising a contractual right. It was acting malevolently, in bad faith, to deprive Plaintiffs of the benefits of the joint venture. This evidence is unquestionably relevant to the preliminary injunction hearing, which involves allegations that Defendants' entire course of conduct was in bad faith, and which requires findings of fact on the merits of Plaintiffs' claims for breach of contract and breach of the

implied covenant of good faith and fair dealing. *See e.g.*, *Richbell Info Servs.*, 309 A.D.2d at 302 (examining defendant's entire course of conduct and explaining that "even an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement").

Finally, evidence about AFC's impending financial insolvency—which AFC did not even deny at the hearing, must less offer any evidence to rebut—is relevant at the preliminary injunction stage. A defendant's financial health—or, as in this matter, impending insolvency—is relevant to the issue of irreparable harm. *See, e.g.*, *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 140-41 & n.8 (3d Cir. 2000) (collecting cases); *Hoxworth v. Blinder, Robinson, & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (concluding that "the unsatisfiability of a money judgment can constitute irreparable injury," and upholding district court's finding that one of the defendants would likely be unable to satisfy a future money judgment, as defendant was dissipating and secreting assets); *Saturn of Denville New Jersey, LP v. General Motors Corp.*, 2009 WL 1545559, at *7 (D.N.J. May 29 2009) ("'Even if a loss is fully compensable by an award of money damages, however, extraordinary circumstances, such as a risk that the defendant will become insolvent before a judgment can be collected, may give rise to the irreparable harm necessary for a preliminary injunction.'") (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (2009)). Simply put, if AFC becomes insolvent, Plaintiffs will be barred from recovering money damages, and those circumstances are relevant to the Court's irreparable harm analysis.

In any case, AFC's financial straits are directly relevant to AFC's bad faith. Plaintiffs have alleged—and have provided proof—that AFC, in bad faith, chose to raise pretextual defaults to then seize assorted assets from Plaintiffs. Accordingly, evidence explaining AFC's motivation—*e.g.*, evidence that AFC faces a cash shortage while needing to cover dividends or other obligations in the short term—is relevant to proving and explaining the alleged bad faith. Of course, Defendants were free to offer evidence negating those allegations, but Defendants cannot exclude all evidence on those relevant issues.

**Parol Evidence.** Defendants' objections to witness testimony regarding the intent for contractual terms are misplaced. As a threshold matter—and as stated in Plaintiffs' Reply Brief—several of the contract provisions in question are indeed ambiguous as to what conduct constitutes a breach by Plaintiffs. *See* Dkt. 28, 19-21 (explaining ambiguity as to what constitutes a breach of section 5.3). Therefore, even if ambiguity were a prerequisite to the consideration of any evidence from the hearing, the parol evidence rule would not bar that evidence.

Additionally, evidence regarding the parties' understanding and actions under assorted contractual provisions is relevant to issues well beyond the construction of ambiguous contractual terms. Under New York law, for example, evidence under the partial performance doctrine "fall[s] outside the prohibition of the parol evidence rule and N.Y. Gen. Oblig. Law § 15-301(1)." *Mooney v. AXA Advisors, L.L.C.*, 19 F. Supp. 3d 486, 504 (S.D.N.Y. 2014). Thus, the parol evidence rule does not bar consideration of evidence

that there was a subsequent *oral* contract modifying the original Forbearance Agreement, as discussed extensively in Plaintiffs' Reply Brief. *See* Dkt. 28, at 11-15. As shown by that evidence, Plaintiffs agreed to hire outside counsel to challenge the license denial, and in exchange, AFC agreed to authorize the expenditures required for the appeals process, while also holding off on any foreclosure on the facility. *E.g.*, *Mooney*, 19 F. Supp. 3d at 504 ("Under [the partial performance] doctrine, an oral agreement may modify a preexisting written agreement if (1) there has been partial performance of the oral modification and (2) that partial performance is unequivocally referable to the oral modification—that is, the conduct constituting the alleged partial performance must not be compatible with the written agreement.") (citing *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343-44, 366 N.E.2d 1279 (1977)). Defendants cannot use a narrow parol evidence doctrine to shield evidence that is highly relevant to—if not dispositive of—a host of other critical issues in the litigation.

***Evidence Regarding Mr. Bossidy.*** Defendants are simply incorrect that the testimony regarding Mr. Bossidy's management is irrelevant at this stage of the proceedings. As this Court emphatically recognized at the start of the hearing, Mr. Bossidy acting as an agent of AFC and for AFC's benefit is obviously relevant to Plaintiffs' likelihood of success on the merits. Mr. Bossidy's conduct as the Chief Restructuring Officer was at the heart of at least one of the alleged "defaults" related to the Certificate of Occupancy in the New Jersey operation. Moreover, as explained above, evidence regarding Mr. Bossidy's collusion with Defendants to aid them in foreclosing is directly relevant to Plaintiffs' claims that AFC breached the implied covenant of good faith and fair dealing. *See, e.g.*, *Schertz*, 180 A.D.3d at 610; *Richbell Info Servs.*, 309 A.D.2d at 302.

Not only is evidence regarding Mr. Bossidy relevant to Plaintiffs' breach of contract and breach of implied covenant claims, it is also relevant in light of Mr. Neville's plainly uncredible testimony. Mr. Neville was the recipient of several inappropriate communications from Mr. Bossidy that were introduced into evidence at the hearing. Mr. Neville maintained in his testimony that he was not collaborating with Mr. Bossidy to collect "a list" of potential defaults, despite evidence to the contrary. The evidence regarding Mr. Bossidy is relevant and should be admitted and considered in full.

\* \* \*

We thank the Court for its time and consideration of these matters.

Dated: May 5, 2025

Respectfully submitted,
**DYNAMIS LLP**

By: */s/ Jamie Hoxie Solano*
Jamie Hoxie Solano, Esq.
NJ Bar No. 426422024
(214) 454-8829


11 Park Place  
New York, NY 10007  
JSolano@dynamisllp.com  

Michael B. Homer, Esq.  
(617) 693-9732  
MHomer@dynamisllp.com  
Constantine Economides, Esq.  
(305) 985-2959  
ceconomides@dynamisllp.com  
Eric Rosen, Esq.  
(617) 802-9157  
ERosen@dynamisllp.com  
225 Franklin Street, 26th Floor  
Boston, MA 02110  

*Pro hac vice applications pending*

*Attorneys for Plaintiffs*