**O'MELVENY & MYERS LLP**
Jeffrey A. N. Kopczynski
Abby F. Rudzin (*admitted pro hac vice*)
1301 Ave. of the Americas, 17th Fl.
New York, NY 10019
Ph: (212) 326-2000
Fx: (212) 326-2061
jkopczynski@omm.com
arudzin@omm.com

*Counsel for Defendants*
*Advanced Flower Capital Inc.*
*and AFC Agent LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAYDEN GATEWAY LLC and BLOC DISPENSARY LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADVANCED FLOWER CAPITAL INC. and AFC AGENT LLC,<br><br>    Defendants. | Civil Action No. 3:25-cv-02789-ZHQ-JBD |

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

RESPONSES TO THE COURT'S QUESTIONS ....................................................... 5

    I.    Counsel did not violate the terms or spirit of the *Status Quo* Order. .................................................................................................... 5

    II.    Counsel did not violate Model Rule of Professional Conduct 3.3 concerning candor to this Tribunal. ....................................................... 7

    III.    Counsel did not violate Model Rule of Professional Conduct 3.3 concerning candor to the New York Court. ........................................... 8

CONCLUSION ............................................................................................................ 9

## PRELIMINARY STATEMENT

Defendants and their counsel wish to begin by apologizing for any confusion arising from the colloquy between counsel and the Court during the April 24 telephonic conference or the May 2 hearing on Plaintiffs' Motion for an Order to Show Cause with Temporary Restraints.  Counsel did not intend to show any disrespect to the Court or to seem evasive.  Regardless, counsel takes responsibility for the Court's frustration and hopes to clarify matters with this submission.

As the Court is aware, AFC has loaned tens of millions of dollars to the Borrowers, including Plaintiffs.[1]  When AFC entered into that lending relationship, it obtained separate contractual guarantees from the Borrowers' parent company, JG HoldCo LLC, and from its majority shareholders, Michael Kanovitz and Jon Loevy, in the event the Borrowers were unable to repay the loan.

During the April 24 telephonic conference with the Court about a potential *status quo* order, counsel did not affirmatively disclose attorney-client privileged discussions with AFC about potentially filing a lawsuit against JG HoldCo to enforce its guaranty.  At that time, while AFC intended to sue JG HoldCo, counsel had not even drafted a complaint to share with AFC, AFC had not approved filing any particular document, and counsel believed in good faith that the matters were

---

[1] For the Court's convenience, we use the same naming conventions as in our Opposition to Emergent Application for a Preliminary Injunction and cite to exhibits for the hearing by their exhibit number.  All other cited exhibits are attached to the Declaration of Abby F. Rudzin, submitted with this response.

unrelated in any event because Plaintiffs seek emergent relief to prevent AFC from exercising remedies on their property, not property belonging to the guarantors.

Counsel therefore did not violate Model Rule of Professional Conduct 3.3, which prohibits knowingly false statements to the Court. Defendants and their counsel also did not violate the *status quo* order (ECF 17)—in letter or spirit. AFC's lawsuit against JG HoldCo does not seek to seize, foreclose on, or auction any of Plaintiffs' assets. JG HoldCo is the Borrowers' parent company that owns profitable cannabis businesses in many states, and AFC has merely put down a marker to protect its interests under its agreement with JG HoldCo. The JG HoldCo action is in its infancy—neither party has yet asked for judicial intervention—and it would not be impacted by the Court's pre-discovery determination of whether Plaintiffs have shown a likelihood of success on their claims here.

## BACKGROUND

This is just one of four litigations arising out of AFC's loan to the Borrowers. The lawsuits are pending in four different fora, and AFC faces different counterparties in each. They are listed below in the order in which they were filed.

**1. The Foreclosure Action (Pennsylvania State Court).** On February 5, 2025, AFC, along with AFC Institutional Fund, filed a mortgage foreclosure action against SRG HI Park LLC in the Pennsylvania Court of Common Pleas, Luzerne County (CV No. 202501520). (Ex. A.) This is the Pennsylvania cultivation foreclosure discussed in the parties' Forbearance Agreement and at the hearing. (*See* D-Ex. 6 § 5.10.) SRG HI Park is one of the Borrowers under the Credit Agreement (*see* P-Ex. 8), though not a plaintiff here. On March 31, SRG HI Park

-2-

filed an Answer asserting nineteen affirmative defenses, many of which rest on the Borrowers' contention that they are not in default under the Credit Agreement or the Forbearance Agreement.  (Ex. B.)

**2. The Shareholder Action (S.D.N.Y).**  On April 10, AFC filed a lawsuit in the Southern District of New York against Messrs. Loevy and Kanovitz (the "Shareholder Action").  (Ex. D.)  As discussed at the hearing, Messrs. Lovey and Kanovitz agreed to guaranty some of the Borrowers' obligations.  (Ex. C.)  The complaint asserts a contractual claim to enforce the shareholder guaranty and various tort claims, including a claim for violations of the Racketeer Influenced and Corrupt Organizations Act.  The complaint alleges, among other things, that Messrs. Loevy and Kanovitz caused the Borrowers to repeatedly default under the Credit Agreement and then committed fraud to hide those defaults.  (*See id*. at 16–37 (Section D: "The Events of Default Defendants Repeatedly Hid from AFC").)  The Action was filed in federal court in New York because Messers. Loevy and Kanovitz, both citizens of Illinois, consented to that Court's jurisdiction in the shareholder guaranty.  (Ex. C, ¶ 24(b); P-Ex. 8 § 13.)

The Southern District of New York's Civil Cover Sheet does not ask parties to identify related matters proceeding in other jurisdictions.  It requires parties to confirm only whether the "action, case, or proceeding, or one essentially the same, [has] been previously filed in SDNY at any time," so AFC did not list the Pennsylvania Foreclosure Action.  (*See* Ex. E.)

**3. This Action (D.N.J.).** Plaintiffs filed this action on April 17—one week after AFC had filed the Shareholder Action in the Southern District of New York. Their Civil Cover Sheet does not list the Pennsylvania Foreclosure Action or the Shareholder Action as related cases. (*See* ECF 1-1.) That is likely because this District's Civil Local Rules define "Related Cases" to include matters "already or previously pending in this Court," Civ. Rule 40.1(c), and the District's form Civil Cover Sheet does not call for information about cases proceeding in other jurisdictions.

**4. The Parent Action (New York State Court).** On April 28, AFC filed a lawsuit in the Supreme Court of the State of New York, County of New York, against JG HoldCo LLC, the Borrowers' parent company (the "Parent Action"). (Ex. G.) The 7-page complaint is limited in scope: AFC asserts only a single breach-of-contract claim, seeking to enforce JG HoldCo's guaranty of the Borrowers' obligations under the Credit Agreement. JG HoldCo consented to jurisdiction in New York for such a claim. (Ex. F, § 34(b); P-Ex. 8 § 13.) AFC seeks damages, an injunction prohibiting JG HoldCo from disposing of or encumbering its own assets, and a lien on and secured interest in those same assets. (Ex. G at 6–7.)

The New York court requires parties to identify related cases only at the time they file a "Request for Judicial Intervention." *See* N.Y.S.Unified Court System, First Judicial Dist., Supreme Ct., Civil Branch, NY County, "RJIs & Assignments," § D, available at https://ww2.nycourts.gov/courts/1jd/supctmanh/RJIs-

Assignments.shtml. Neither AFC nor JG HoldCo has yet filed a Request for Judicial Intervention. (Rudzin Decl. ¶ 9.)

## RESPONSES TO THE COURT'S QUESTIONS

**I.  Counsel did not violate the terms or spirit of the *status quo* order.**

The Court's Order to Show Cause first asks "[w]hether Defense Counsel is in violation of the TRO in this case and/or the spirit of the TRO in this case based upon the language of the TRO and the Court's discussions with counsel at the case management conference." (ECF 35.)

Counsel's filing of the Parent Action did not violate the *status quo* order (the "TRO"), in letter or in sprit. The TRO provides: "Defendants will not seize any of Plaintiffs' assets or cash (beyond the cash sweeps permitted by the 2024 Forbearance Agreement), initiate foreclosure proceedings, or seek to auction any of Plaintiffs' assets, until the earlier of (a) the date the Court resolves Plaintiffs' Motion for Order to Show Cause or (b) May 12, 2025." (ECF 17 at 2.)

The Parent Action does not seek to "seize" anything, "to initiate foreclosure proceedings," or to "auction" any assets at all—it is a breach-of-contract action in which AFC primarily seeks damages: "As a direct and proximate result of JG HoldCo's breach of the Parent Guaranty, AFC has been damaged in an amount not less than $124,967,793.00, plus interest, costs, and attorneys' fees, as well as any other amounts that may become due and owing under the Credit Agreement and the other loan documents." (Ex. G ¶ 28.) And the only property at issue is JG HoldCo's assets, not Plaintiffs' assets: AFC asks that the New York Court, in addition to awarding damages, "[e]njoin JG HoldCo from transferring,

encumbering, or otherwise disposing of any of *its* assets" and "[a]ward AFC a lien on and secured interest in all *assets of JG HoldCo*." (*Id.* at 7 (emphasis added).) As Plaintiffs have told the Court, JG HoldCo owns profitable cannabis businesses in other states. (ECF 7-3, ¶ 32; *see also* May 2, 2025 Tr. 179:00-25 ("[W]e have operations in multiple states. So there's different LLCs in each of those.").) *Those* are the assets in which AFC seeks a lien and security interest; AFC already has a lien on, and a secured interest, in the Borrowers' assets. (Rudzin Decl. ¶ 10 & Ex. H.) Plaintiffs' statement to this Court that the "lawsuit explicitly asks a New York state court . . . to freeze all of the Plaintiffs' assets" (ECF 18 at 1) shows that they either misread the complaint or chose to misrepresent its contents.

Filing the Parent Action also did not violate the spirit of the TRO. As counsel understands it, the purpose of the TRO is to preserve Plaintiffs' operating capital and assets while the Court considers Plaintiffs' Emergent Application for an Order to Show Cause with Temporary Restraints to be Converted to a Preliminary Injunction. (Rudzin Decl. ¶ 3; *see also* ECF 7.) Plaintiffs argued irreparable harm based only on dissipation of their assets and business and regulatory relationships, not JG HoldCo's. (*See, e.g.*, ECF 8 ("If AFC Is Not Enjoined from Continuing to Raid Plaintiffs' Bank Accounts, Plaintiffs and Other Innocent People Will Suffer Irreparable Harm.").)[2] Counsel does not see how seeking relief from JG HoldCo

---

[2] This was reaffirmed at the hearing. (*See* ECF 40, ¶¶ 131–36 (describing alleged irreparable harm as harm to Plaintiffs only).)

-6-

based on its profitable businesses in other states would harm Plaintiffs.  (Rudzin Decl. ¶ 2.)

## II. Counsel did not violate Model Rule of Professional Conduct 3.3 concerning candor to this Tribunal.

The Court's Order next asks Defendants to show cause "[w]hether Defense Counsel is in violation of Model Rule of Professional Conduct 3.3 which sets forth a lawyer's obligation, as an officer of the Court, of candor to the tribunal."  (ECF 35 at 2.)  Model Rule of Professional Conduct 3.3, Candor Toward the Tribunal, provides that a lawyer "shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."[3]  Counsel did not make any false statements of fact or fail to correct any past false statements of material fact previously made to the Court.  And as explained in Section I, counsel did not believe that AFC's contractual relationship with JG HoldCo or AFC's remedies against JG HoldCo were before the Court or even potentially included in a TRO such that silence about a future lawsuit would be misleading.  (Rudzin Decl. ¶¶ 2-3.)  Plaintiffs never suggested, for example, that they were or would be seeking relief from the Foreclosure Action or the Shareholder Action,[4] and defense counsel considered the upcoming lawsuit based on the parent guaranty to be similarly independent of this litigation

---

[3] Rule 3.3 contains several other provisions that are not even potentially applicable here.  These provisions concern failing to disclose controlling adverse legal authority, offering false evidence, and concealing criminal or fraudulent activities, along with a heightened disclosure obligation in *ex parte* proceedings.

[4] When Plaintiffs' counsel claimed that Plaintiffs would be irreparably harmed if AFC filed a foreclosure action the Borrowers, AFC's counsel pointed out that one

Moreover, counsel could not disclose AFC's future litigation plans to Plaintiffs and the Court without violating counsel's confidentiality obligations under Model Rule of Professional Conduct 1.6: Confidentiality of Information. (Rudzin Decl. ¶ 4.) At the time of the conference, the complaint had not yet been drafted, much less shared with or approved by AFC. (*Id.* ¶ 9.) Counsel considered discussions with AFC about the future complaint to be confidential information protected by the attorney-client privilege. (*Id.* ¶ 4.)

Although not requested by the Court, Defendants will also address New Jersey Rule of Professional Conduct 3.3, which is slightly broader than the Model Rule. New Jersey Rule of Professional Conduct 3.3 contains an additional prohibition against the "fail[ure] to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal," but it has an exception when "disclosure is protected by a recognized privilege," such as the attorney-client privilege. NJ RPC 3.3(a)(5). Thus to the extent the Court believes that counsel's omission concerning the future filing was somehow misleading, counsel's obligation to the maintain attorney-client privilege still required counsel not to disclose it.

### III. Counsel did not violate Model Rule of Professional Conduct 3.3 concerning candor to the New York Court.

The Court's Order also asks Defendants to show cause "[w]hether Defense Counsel is in violation of Model Rule of Professional Conduct 3.3 for the failure to

---

had already been filed. Plaintiffs' counsel had no response and certainly did not suggest that this Court should try to stop that action from proceeding.

-8-

inform the New York court system about the TRO, the preliminary injunction hearing, and this litigation." (ECF 35 at 2.)  Counsel was not required to disclose the existence of this action, the TRO, or the May 2 hearing when the Parent Action was filed because, as explained above, none of the remedies sought in that action concern Plaintiffs or the property that Plaintiffs seek to protect here with a preliminary injunction.  Nor does that filing "circumvent the determination the Court will be making on Friday," as Plaintiffs claimed in their letter to the Court. (ECF 18 at 1.)  The Court's determination on Friday will be whether Plaintiffs can show a likelihood of success on their claims against AFC.  *See Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 804–05 (2d Cir.1990) (TRO to preserve status quo is not determination on the merits).  Discovery and a final determination of the Borrowers' defaults under their loan agreement will necessarily occur simultaneously in different litigations—including the two AFC had filed before Plaintiffs brought this action—because there are different parties involved and different jurisdictional limitations.

Moreover, Counsel have not yet had any interactions with a tribunal in the Parent Action.  Neither AFC nor JG HoldCo has yet filed a Request for Judicial Intervention in the Parent Action, so no judge has been assigned the case.  (Rudzin Decl. ¶ 9.)  There was thus no opportunity or need to disclose anything about this action to that judge.

## CONCLUSION

Defendants and their counsel respectfully request that the Court discharge its Order to Show Cause (ECF 35) in light of the foregoing explanations and the

concurrently filed Declaration of Abby F. Rudzin. Counsel should have been more clear in responding to the Court's questions on this topic at the beginning of the May 2 hearing, and for that, both Defendants and their counsel apologize. But filing the Parent Action has no bearing on the TRO or the assets that Plaintiffs seek to protect in this case, and counsel's representations to the Court were accurate.

| | |
|---|---|
| Dated: May 9, 2025 | */s/ Jeffrey Kopczynski* <br> Jeffrey A. N. Kopczynski <br> Abby F. Rudzin (*admitted pro hac vice*) <br> O'MELVENY & MYERS LLP <br> 1301 Ave. of the Americas, 17th Fl. <br> New York, NY 10019 <br> Ph: (212) 326-2000 <br> Fx: (212) 326-2061 <br> jkopczynski@omm.com <br> arudzin@omm.com <br><br> *Counsel for Defendants Advanced Flower Capital Inc. and AFC Agent LLC* |