MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
————
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 864-7200
e-mail: kmarino@khmarino.com
*OF COUNSEL

May 29, 2025

**VIA ECF**
The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re:   *Hayden Gateway LLC, et al. v. Advanced Flower Capital Inc., et al.*,
      Case No. 3:25-cv-02789-ZNQ-JBD

Dear Judge Quraishi:

      We entered our appearance on behalf of Defendants Advanced Flower Capital Inc. and AFC Agent LLC (collectively, "AFC") yesterday and write in response to the Court's text order (ECF No. 57) to address the May 28, 2025 letter of Plaintiffs Hayden Gateway LLC ("Hayden") and Bloc Dispensary LLC ("Bloc") requesting that the Court compel AFC to approve the funding of Plaintiffs' injunction bond out of a bank account that serves as AFC's collateral for the loan or, alternatively, to excuse the bond requirement entirely (ECF No. 53).[1]  At the outset, we note that counsel for Hayden and Bloc failed to confer with counsel for AFC prior to the filing of the letter motion, as required by local practice.  But excusing that failure, the letter motion should be denied for the reasons explained below.

      **I. Background**

      On May 9, 2025, the Court granted Plaintiffs' motion for preliminary injunctive relief, enjoining AFC from taking certain actions with respect to Plaintiffs' assets beyond permitted cash sweeps under the parties' agreements.  The Court conditioned this relief on Plaintiffs posting $1 million in security pursuant to Federal Rule of Civil Procedure 65, specifically ordering that "the injunctions in this Order do not become effective until Plaintiffs post their $1 million security." (ECF No. 47.)  Nearly three weeks later, Plaintiffs have been unable to secure this bond—despite the amount representing only a fraction of their outstanding obligations to AFC, which currently exceed $100 million.[2]  Rather than acknowledge their inability to satisfy the

---

[1]   We will shortly file *pro hac vice* motions seeking the admission of our co-counsel, Quinn Emanuel Urquhart & Sullivan, LLP.

[2]   AFC has voluntarily complied with the preliminary injunction's terms while Plaintiffs have searched unsuccessfully for funding.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Zahid N. Quraishi
May 29, 2025 – Page 2

Court's condition precedent, Plaintiffs now seek to have AFC fund the very bond meant to protect AFC from wrongful injunctive relief with AFC's own collateral for the loan, or alternatively, to eliminate the security requirement altogether.

### II. Plaintiffs' Request Lacks Merit

*First, Plaintiffs' characterization of the relevant events is incorrect*. Contrary to their assertion that "AFC refused to approve Hayden Gateway LLC's transfer of the $1 million security," Plaintiffs never asked AFC to consent to the transfer the funds for the bond. Instead, AFC was contacted by its bank at approximately 2:13 P.M. on Tuesday about Plaintiffs' attempted unilateral transfer—made without any prior notice to AFC. While AFC was still evaluating this request, Plaintiffs filed their letter motion without first attempting to confer with AFC or its counsel.

*Second, allowing Plaintiffs to use collateralized loan funds as security would defeat Rule 65's fundamental purpose*. The preliminary injunction prevents AFC from exercising its contractual remedies and potentially forces AFC to forego recovery options while the underlying dispute is resolved. The bond requirement exists to compensate AFC for losses it may suffer during this period—including opportunity costs, diminished asset values, or other damages—if the Court ultimately determines the injunction was improvidently granted. *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 239–40 (3d Cir. 2003). Courts consistently hold that this bond provides the exclusive remedy for erroneously enjoined parties if the applicant ultimately loses. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) ("It is [] the only recourse for a wrongfully enjoined party"); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 n.31 (3d Cir. 1990) (noting that "defendants injured by wrongfully issued preliminary injunctions can recover only against the bond itself").

To serve its protective purpose, the bond must consist of unencumbered assets that can actually compensate AFC for its losses—not funds that are already AFC's collateral under the loan agreements. Using AFC's collateral as the bond would provide AFC with no meaningful protection, as in the event AFC had to resort to the bond, it would simply be recovering its own funds rather than receiving compensation for the harm caused by the injunction. Moreover, the bond requirement serves as a critical deterrent to improvident injunction applications by forcing applicants to weigh costs and liability risks. *Mallet*, 16 F.4th at 391. Allowing applicants to fund bonds with assets they would lose anyway if the injunction is reversed eliminates this important safeguard.

*Third, Plaintiffs' proposed use of collateralized loan funds directly contradicts their own arguments for injunctive relief*. During the preliminary injunction hearing, Plaintiffs argued they would suffer irreparable harm from AFC's cash sweeps because these funds were essential for payroll and tax obligations. (*See* Transcript for Preliminary Injunction Hearing ("Tr.") 57:13–15;

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Zahid N. Quraishi
May 29, 2025 – Page 3

221:16–25, ECF No. 36.)  The Court credited this claim, referencing's Plaintiffs' testimony that the allegedly unauthorized cash sweeps would have a "disastrous effect" on Plaintiffs and could jeopardize their ability to make payroll in violation of regulations and union contracts.  (ECF No. 46 at 34–35.)  Plaintiffs now seek to divert these very same "essential" funds to post bond security.  This contradiction is problematic.  If these funds are necessary to prevent the irreparable harm that justified the injunction, then using them for bond security would create the very harm the injunction was designed to prevent.  Conversely, if the funds can be diverted for bond purposes, then Plaintiffs' irreparable harm argument was overstated.  Plaintiffs cannot have it both ways.

*Fourth, Plaintiffs' alternative request to eliminate or reduce the security requirement lacks merit.*  Plaintiffs state surprise that they "will have to post 100% of any bond," but this reflects a misunderstanding of how security requirements work.  The Court has already considered and rejected Plaintiffs' request for a minimal bond, which was based on the argument that Defendants were adequately secured by their security interest in the collateral and control over escrowed funds.  (ECF No. 46 at 37–38.)  The Third Circuit has made clear that exceptions to Rule 65's security requirement are exceptionally rare; in fact, the requirement is "almost mandatory." *Hoxworth*, 903 F.2d at 210.  Plaintiffs cite no legal authority supporting their request for relief from this well-established requirement, and their request should be rejected.

### III. Conclusion

Plaintiffs secured preliminary injunctive relief subject to a clear condition: posting a $1 million bond.  Nearly three weeks have passed since the Court's May 9 Order, yet Plaintiffs have failed to meet this fundamental requirement.  If Plaintiffs cannot post proper security without using funds that collateralize the very loan at issue, they cannot claim the benefit of preliminary injunctive relief.  Defendants respectfully request that the Court deny Plaintiffs' request and direct Plaintiffs to either post proper security forthwith or forfeit the preliminary injunctive relief.[3]

Respectfully,

Kevin H. Marino

cc: All counsel of record

---

[3] Should the Court nevertheless allow Plaintiffs to post security as proposed, Defendants respectfully submit that such permission should be granted without prejudice to any rights, claims, or defenses that may arise from adverse consequences of using these funds for security.