<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HAYDEN GATEWAY LLC,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ADVANCED FLOWER CAPITAL INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 25-2789 (ZNQ) (JBD) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a partial Motion for Summary Judgment filed by Defendants Advanced Flower Capital Inc. and AFC Agent LLC (collectively, "Defendants" or "AFC"). ("Motion," ECF No. 121.) Defendants seek summary judgment as to Count IV of the Amended Complaint.[1] Defendants submitted a brief in support of the Motion. ("Moving Br.," ECF No. 121-1.) Plaintiffs Hayden Gateway LLC ("Hayden"), Bloc Dispensary LLC ("Bloc"), and JG HoldCo LLC ("JG") (collectively, "Plaintiffs") submitted a brief in opposition ("Opp'n Br.," ECF No. 123). Defendants did not reply.

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motion.

---

[1] Count IV of the Amended Complaint asserts a claim for declaratory relief regarding Plaintiffs' loan balance. (ECF No. 77 ¶¶ 339–345.)

1

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The Court assumes the parties' familiarity with the underlying facts and procedural history and only recites those facts necessary to decide the instant motion. For a comprehensive review of the factual history, reference is made to *Hayden Gateway LLC v. Advanced Flower Capital Inc.*, Civ. No. 25-2789, 2025 WL 3314471, at *1–3 (D.N.J. Nov. 29, 2025).

This case stems from a contract dispute. Plaintiffs are licensed cannabis businesses operating in New Jersey and Pennsylvania and are part of a group of affiliated cannabis companies in five states doing business as Justice Cannabis Co. (Am. Compl. ¶ 1.) AFC holds itself out to be a real estate investment trust ("REIT"). (*Id.* ¶ 11.) In 2021, Defendants lent money to Plaintiffs to finance the build-out and operation of Plaintiffs' Pennsylvania and New Jersey cannabis operations. (*Id.* ¶ 28.)

A.    **FACTS PERTINENT TO THE MOTION FOR SUMMARY JUDGMENT**

Plaintiffs and several other entities entered into the Second Amended & Restated Credit Agreement with AFC on September 30, 2021 (the "Credit Agreement"). (Defendants' Statement of Material Facts Not in Dispute ("DSMF") ¶ 1, ECF No. 121-3.) The Credit Agreement is governed by, and to be construed in accordance with, New York state law. (*Id.* ¶ 4.) For obvious reasons, Section 1.1 of the Credit Agreement defines "Applicable Law" to exclude federal law pertaining to cannabis. (*Id.* ¶ 2.)

B.    **PROCEDURAL HISTORY**

On July 11, 2025, Plaintiffs filed an Amended Complaint that incorporated some of the evidence presented at a prior preliminary injunction hearing and added the declaratory judgment claim at issue on the Motion. (ECF No. 77.)

On October 10, 2025, the Honorable J. Brendan Day, U.S.M.J., ordered the parties to submit supplemental briefing "more fully addressing the proper interpretation of, and interplay between, Section 856 of the Internal Revenue Code . . . and Section 2.5(f) of the parties' Credit Agreement, in the context of [plaintiffs'] declaratory judgment claim."  (ECF No. 103.)  Specifically, the briefs were to "address the definition of 'Applicable Law' in Section 1.1 of the Credit Agreement; and the meaning of the following phrases in Section 2.5(f) of the Credit Agreement: 'Maximum Lawful Rate'; 'highest rate permissible'; and 'rate or rates of interest or manner of payment exceeds the maximum allowable under Applicable Law.'"  (*Id.*)  Thereafter, the parties submitted supplemental briefing addressing Judge Day's Text Order.  (*See* ECF Nos. 104, 105.)

On November 29, 2025, the Court denied Defendants' Motion to Dismiss.  (*See* ECF No. 109, 110.)  Defendants sought leave to file a short-form summary judgment motion as to Count IV of the Amended Complaint.  (*See* Moving Br. at 1; Am. Compl. ¶¶ 339–345.)  The Court granted Defendants' request and instructed Defendants to file a motion incorporating and refiling their prior supplemental brief and filing "a cover submission . . . framing the motion, outlining the procedural posture/history, setting out relevant legal standards, and/or summarizing its arguments, but raising no new arguments."  (*See* ECF 118.)  Plaintiffs made corresponding filings.

## II.   SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

## III.   LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.*

"[W]hen a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); accord, *Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment.")). "Failure to sustain this burden will result in entry of judgment for the moving party." *Cedar Food Market 7, Inc. v. United States*, Civ. No. 18-3470, 2019 WL 6907489, *4 (D.N.J. Dec. 19, 2019).

## IV. DISCUSSION

In their Amended Complaint, Plaintiffs seek a declaration that Section 2.5(f) of the Credit Agreement requires recharacterizing Plaintiffs' interest payments as principal payments because those payments exceeded limits imposed on Defendants by Section 856 of the Internal Revenue Code. (*See* Am. Compl. at 3–4; ¶¶ 339–345.) In the Motion, Defendants argue that whether it is a REIT does not impact the interest it may legally charge under the Credit Agreement. (Moving Br. at 2.)

### A.  SECTION 2.5(f) OF THE CREDIT AGREEMENT

"Usury is, generally speaking, charging an illegal rate of interest." 75 Am. Jur. Proof of Facts 3d 103 (Originally published in 2003). Almost every state in the country has enacted usury laws designed to protect borrowers from exorbitant interest rates. *See id.* To insulate themselves from the consequences of a usurious loan, lenders will include clauses in loan agreements that reduce a loan's interest rate if it should exceed the legally permissible interest rate. Amy Carter, *The Efficacy and Risk of Usury Savings Clauses*, 2 Transactional Law. 3 (2012). These clauses are commonly referred to as "usury savings clauses." *Id.*

Here, the Credit Agreement includes a usury savings clause in Section 2.5(f). The provision reads:

> **Intent to Limit Charges to Maximum Lawful Rate.** In no event shall the interest rate or rates payable under this Agreement or any other Loan Document, plus any other amounts paid in connection herewith or therewith, exceed the highest rate permissible under any law that a court of competent jurisdiction shall, in a final determination, deem applicable. . . . [I]f such rate or rates of interest or manner of payment exceeds the maximum allowable under Applicable Law, then, *ipso facto*, as of the date of the Closing Date, the Borrowers are and shall be liable only for the payment of such maximum amount as is allowed by law, and payment received from the Borrowers in excess of such legal maximum, whenever received, shall be applied to reduce the principal balance of the Obligations to the extent of such excess.

(DSMF ¶ 3.) Defendants argue the clause contains language commonly used in usury savings clauses. (*See* Moving Br. at 4 (citing *DarkPulse, Inc. v. EMA Fin., Inc.*, 2023 WL 2307386, at *5 (S.D.N.Y. Mar. 1, 2023) (included clause that required plaintiff's interest payments not exceed "the maximum lawful rate authorized under applicable law"); *Hillair Cap. Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 338 (S.D.N.Y. 2013) (included clause that required interest rates shall not exceed "the maximum lawful rate authorized under applicable law").)

5

### B.   SECTION 856 OF THE IRS CODE AND COMPLIANCE

Section 856(c) of the Internal Revenue Code ("IRC") is a provision of the federal tax code that defines "real estate investment trust." 26 U.S.C. § 856. It outlines the criteria entities must satisfy to qualify for REIT tax treatment. *Id.* At issue here is one of those criteria: the so-called "75% test." *See id.* It requires an entity to generate at least 75% of gross income from investments in "real property." 26 U.S.C. § 856(c)(3). If an entity fails to meet this criterion, the entity may lose its REIT status—and the tax benefits this affords. 26 U.S.C. § 856(g). Relevant here, an entity that fails the 75% test may still cure that failure. *See* 26 U.S.C. § 856(c)(6).

Plaintiffs argue that Section 5.18 of the Credit Agreement requires application of IRC Section 856 to Section 2.5(f) of the Credit Agreement. Section 5.18 reads:

> **Cooperation with REIT.** The Borrowers and each of their Subsidiaries shall, to the extent commercially reasonable, cooperate with each Lender with respect to amending, supplementing or otherwise modifying any documents or instruments in connection with any actions or modifications not adverse to the Borrowers in any material respect necessary or advisable to maintain the status of any Lender in its capacity as a "real estate investment trust" within the meaning of Section 856 of the Internal Revenue Code.

(ECF No. 88-2; Credit Agreement § 5.18.)

### C.   CONSTRUING THE CREDIT AGREEMENT

The New York Court of Appeals recently restated its views on contract interpretation under New York law:

> The fundamental rule of contract interpretation in New York is that "agreements are construed in accord with the parties' intent." What the parties "say in their writing" provides us with "[t]he best evidence" of this intent, and when a written contract is "complete, clear and unambiguous on its face," we must enforce its plain terms. Determining whether a contract is ambiguous is a question of law.

*Dibrino v. Rockefeller Ctr. N., Inc.*, App. No. 103, 2025 WL 3670593, at *2 (N.Y. Dec. 18, 2025) (internal citations omitted); *see also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir.

6

2009). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022) (citation omitted).

The Court finds that the Credit Agreement is complete, clear and unambiguous as to the parties' dispute. Section 2.5(f) is, as Defendants argue, a generic anti-usury clause. Likewise, the Court construes Section 5.18 as a basic clause requiring Plaintiffs to assist with Defendants' compliance. It obligates Plaintiffs to make commercially reasonable efforts to assist Defendants with "documents or instruments" Defendants might need to maintain their REIT status. Nothing more.

Section 2.5(f) is also clear. It refers explicitly to payments made by *Plaintiffs* "under this Agreement," not payments made by all borrowers within the REIT. AFC's REIT status is determined on a portfolio-wide basis. Plaintiffs have not alleged, much less established, that they are AFC's only borrowers. Other borrowers' payments may have different ratios for value based on real property vs. non-real property, thereby maintaining AFC's compliance with the 75% test. Even if—in the aggregate—AFC's portfolio was to somehow run afoul of the 75% test, there is nothing in the Credit Agreement precluding AFC from adjusting *other* borrowers' loan payments rather than AFC's payments. In any event, there is likewise nothing in the Credit Agreement precluding AFC from rectifying its REIT status with the IRS via IRC Section 856(c)(6). Perhaps more to the point, absent a provision in the Credit Agreement to the contrary, the propriety of AFC's asserted REIT status is a matter to be addressed between AFC and the IRS.

In short, the Court finds nothing in these clauses, either singly or in combination, bestows upon Plaintiffs the right or the authority to verify that AFC meets the criteria for REIT status under IRC Section 856. There is also nothing conveying to Plaintiffs a right to benefit should AFC lose

its REIT status. Accordingly, the Court finds that Plaintiffs are not entitled under the Credit Agreement to a recalculation of their loan balance.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' partial Motion for Summary Judgment. Count IV will be **DISMISSED WITH PREJUDICE**. An appropriate Order will follow.

Date: February 23, 2026

                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**