Kevin H. Marino
John D. Tortorella
John A. Boyle
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, NJ 07928-1488
(973) 824-9300

*Attorneys for Defendants Advanced Flower Capital Inc. and AFC Agent LLC*

OF COUNSEL:
Kevin S. Reed (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jacqueline M. Stykes (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Jason Sternberg (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133
(786) 850-3607

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAYDEN GATEWAY LLC, BLOC DISPENSARY LLC, AND JG HOLDCO LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED FLOWER CAPITAL INC. AND AFC AGENT LLC,<br><br>Defendants. | Case 3:25-cv-02789-ZNQ-JBD<br><br>Hon. Zahid N. Quraishi, U.S.D.J.<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION ON SHORT NOTICE TO CLARIFY THE PRELIMINARY INJUNCTION ORDER** |

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................1

II. BACKGROUND AND PROCEDURAL HISTORY ....................................2

III. ARGUMENT ............................................................................................4

    A. The Court's PI Order Does Not Bar AFC From Exercising Remedies Upon Failure To Pay At Maturity ........................................4

    B. Clarification Is Necessary And Urgent ...............................................5

IV. CONCLUSION...........................................................................................6

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acierno v. New Castle Cnty.*,
  40 F.3d 645 (3d Cir. 1994) ................................................................................5

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
  692 F. Supp. 1488 (S.D.N.Y. 1987) ....................................................................6

*New Jersey Sports Prods., Inc. v. Don King Prods., Inc.*,
  15 F. Supp. 2d 546 (D.N.J. 1998) ......................................................................5

## Rules

Fed. R. Civ. P. 65(d)(1) .......................................................................................5

## I.      PRELIMINARY STATEMENT

Defendants, Advanced Flower Capital Inc. and AFC Agent LLC (collectively, "AFC"), respectfully submit this Motion on Short Notice for clarification of the Court's May 9, 2025 Preliminary Injunction Order (the "PI Order," ECF No. 47). Specifically, AFC asks the Court to confirm that the PI Order does not limit AFC's right to exercise its contractual rights and remedies if Plaintiffs fail to pay their loan in full when the loan matures in eleven days.

On September 30, 2021, AFC and certain co-lenders lent Plaintiffs $75,400,000 pursuant to a written loan agreement to finance the operation of their Pennsylvania and New Jersey businesses. Under the loan agreement, all outstanding principal, accrued interest, and other obligations are due and payable in full on a fixed maturity date: May 1, 2026. If Plaintiffs fail to pay the principal and interest due after maturity, subject to the three (3) business day grace period as set forth therein, the loan agreement entitles AFC to institute foreclosure proceedings and any other rights and remedies available to it pursuant to the loan agreement and related security documents it holds, and under applicable law.

In 2024, AFC contended there had been a number of events of default that entitled it, among other things, to foreclose on the properties. On May 9, 2025, the Court entered a PI Order to prohibit the foreclosure at that time based on a finding that "as of the date of this Order, Plaintiffs are not in breach or default." (ECF

1

No. 47.) The PI Order did not address the rights and remedies available to AFC if Plaintiffs failed to make payment at maturity. Accordingly, AFC submits this motion for clarification to confirm that the order did not, and was not intended to, apply to any default due to Plaintiffs' failure to pay the principal and interest due at maturity. Given the imminent maturity date, AFC respectfully asks the Court to clarify on an expedited basis that the PI Order does not operate to limit AFC's rights and remedies at maturity should Plaintiffs default on their repayment obligations.

## II.    BACKGROUND AND PROCEDURAL HISTORY

After entering into an original loan agreement and an amended and restated credit agreement, on September 30, 2021, Plaintiffs and related entities entered into the Second Amended and Restated Credit Agreement (the "Credit Agreement") with AFC pursuant to which AFC lent Plaintiffs $75,400,000 to finance the operation of their Pennsylvania and New Jersey-based businesses. (ECF Nos. 46 at 3; Reed Decl. Ex. 1 at 32-37.) The Credit Agreement has a fixed maturity date of May 1, 2026, on which date all outstanding principal, accrued interest, and other obligations become due and payable in full. (Reed Decl. Ex. 1 at § 1.1.) As of April 2025, the total outstanding obligations exceeded $123 million. (ECF No. 46 at 9.)

Today, AFC sent a formal maturity notice to the borrowers. If Plaintiffs do not repay the loan on May 1, subject to the three (3) business day grace period set forth in the loan agreement, AFC intends to, among other things, commence

2

foreclosure proceedings in Pennsylvania and New Jersey against the collateral securing the loan, as expressly contemplated by the Credit Agreement, the various related security documents, and applicable law.

In early 2025, AFC declared Plaintiffs in default under the Credit Agreement based on a number of discrete breaches. Plaintiffs contested AFC's declarations and initiated preliminary-injunction proceedings to prevent AFC from foreclosing on the properties. On May 2, 2025, following an evidentiary hearing, this Court issued an Opinion and PI Order on May 9, 2025, which contained three operative injunctions, each expressly tied to a named, specific pre-maturity dispute argued at the hearing. Specifically, the Court enjoined AFC from "seizing any of Plaintiffs' assets or cash … or seeking any remedy for default":

(1)   "that is inconsistent with the parties' oral Reopening Agreement with respect to Plaintiffs' Pennsylvania cultivation facility." (ECF No. 47 at 1.)

(2)    "that is inconsistent with the parties' oral agreement waiving the requirement that Plaintiffs submit audited financial statements to Defendants in 2023 or 2024." (*Id.* at 2.)

(3)  "on the basis that Plaintiffs failed to obtain a final certificate of occupancy for Plaintiffs' Ewing, New Jersey, facility by May 15, 2024." (*Id.*)

The PI Order also declared that "as of the date of this Order, Plaintiffs are not in breach or default of the parties' Credit Agreement and 2024 Forbearance

3

Agreement." (*Id.* at 1.) None of its operative provisions references the loan's maturity date, a failure to pay at maturity, or AFC's rights upon maturity and any failure by Plaintiffs to repay the obligations to AFC in full on or before such date. Indeed, the preliminary injunction proceedings were not concerned with what would happen when the loan came due by its own terms. (*See* ECF Nos. 7, 19, 28, 47.)

## III.    ARGUMENT

### A.    The Court's PI Order Does Not Bar AFC From Exercising Remedies Upon Failure To Pay At Maturity

Each of the PI Order's three operative injunctions addresses a specific, named pre-maturity dispute: AFC's foreclosure on the Pennsylvania cultivation facility inconsistent with the alleged oral Reopening Agreement; AFC's demand for audited financial statements it had allegedly orally waived; and the alleged default based on Plaintiffs' failure to obtain a certificate of occupancy by May 15, 2024. (ECF No. 47.) The PI Order does not address or limit the rights and remedies available to AFC if Plaintiffs fail to repay the loan at maturity.

The Court's declaration that Plaintiffs were "not in breach or default" as of May 9, 2025 reinforces this reading. (*Id.*) The declaration is expressly bounded by the phrase "as of the date of this Order"—it is a contemporaneous finding directed at specific disputed pre-maturity conduct, not a prospective ruling that Plaintiffs bear no repayment obligation when their loan matures by its own terms one year later. (*Id.* at 1.)

Reading the PI Order to bar post-maturity enforcement would also contradict its fundamental purpose.  A preliminary injunction exists to preserve the status quo pending a decision on the merits, not to create new legal relationships or permanently restructure contractual obligations.  *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994).  The status quo preserved here was the parties' pre-maturity relationship.  On May 1, 2026, that relationship ends by the loan's own terms and is replaced by an unconditional repayment obligation—one that exists entirely independent of the pre-maturity defaults the PI proceedings addressed.  Moreover, injunctions must "describe in reasonable detail . . . the act or acts restrained," Fed. R. Civ. P. 65(d)(1), and this PI Order does so with precision—precision that excludes maturity entirely.

### B.    Clarification Is Necessary And Urgent

Courts have inherent authority "to modify and clarify [an] existing injunction."  *New Jersey Sports Prods., Inc. v. Don King Prods., Inc.*, 15 F. Supp. 2d 546, 551 (D.N.J. 1998).  Clarification—as distinguished from modification—is appropriate when a party seeks confirmation of an order's existing and intended scope, not a change to it.  That is precisely what AFC seeks here.

The urgency is self-evident.  The loan matures on May 1, 2026, at which time the entire loan is due and payable as contractually required.  If Plaintiffs fail to make payment, subject to any contractually included grace periods, AFC must be free to,

among other things, immediately commence foreclosure proceedings in Pennsylvania and New Jersey—proceedings that involve courts in other jurisdictions, regulatory bodies, and procedural timelines. Any delay in pursuing AFC's remedies based on the erroneous contention that the PI Order prohibits them will cause concrete, ongoing financial harm to AFC in the form of unpaid principal and interest on a nine-figure loan balance. AFC respectfully requests that the Court resolve this motion based on expedited briefing. AFC is prepared to appear for a telephonic conference at the Court's earliest convenience.[1]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order clarifying that the May 9, 2025 PI Order (ECF No. 47) does not bar AFC from commencing and prosecuting foreclosure proceedings against the collateral securing the loan in Pennsylvania and New Jersey and exercising any and all other

---

[1] Plaintiffs' unproven claims for damages against AFC, which they have asserted generally in other actions, are unrelated to AFC's rights under the loan documents to foreclose on the collateral underlying the loan. In *Citibank, N.A. v. Nyland (CF8) Ltd.*, 692 F. Supp. 1488 (S.D.N.Y. 1987), for instance, the court held that defendant could not prevent a lender from foreclosing where (as Plaintiffs claim here) a "faithless agent" might have caused the borrower to incur damages. *Id.* at 1490 ("If Bernstein was disloyal to Nyland, Nyland can seek to recover its losses from him, but these allegations provide no defense to foreclosure"). Even if Plaintiffs were entitled to an offset or damages arising from AFC's supposed misconduct, Plaintiffs' allegations are not a defense to enforcement of AFC's contractual foreclosure rights.

rights and remedies available under the Credit Agreement, the related security documents, and applicable law upon a maturity default.

Dated: April 20, 2026

**MARINO, TORTORELLA & BOYLE, P.C.**

By: */s/ Kevin H. Marino*
  Kevin H. Marino
  John D. Tortorella
  John A. Boyle

  437 Southern Boulevard
  Chatham, NJ 07928-1488
  Telephone:  (973) 824-9300
  Facsimile:   (973) 824-8425
  kmarino@khmarino.com
  jtortorella@khmarino.com
  jboyle@khmarino.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Kevin S. Reed (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jacqueline M. Stykes (*pro hac vice*)
295 Fifth Avenue
New York, NY 10016
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100
kevinreed@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jacquelinestykes@quinnemanuel.com

Jason Sternberg (*pro hac vice*)
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133
Telephone: (786) 850-3607
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com

*Attorneys for Defendants Advanced Flower Capital Inc. and AFC Agent LLC*

7